```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:
         ALICE PHILLIPS BELMONTE

                Debtor.
-----------------------------------------------------------X

HAROLD D. JONES, Chapter 7 Trustee,
Plaintiff/Appellant,

        v.

CRAIG A. BRAND, and THE BRAND LAW
FIRM, P.A.,
Defendant/Appellee.
-----------------------------------------------------------X

THE BRAND LAW FIRM, P.A.,
Defendant/Appellant,

        v.

HAROLD D. JONES, Chapter 7 Trustee,
Plaintiff/Appellee.
-----------------------------------------------------------X
```

For Online Publication Only

**MEMORANDUM & ORDER**
17-CV-2494 (JMA)
17-CV-2503 (JMA)

FILED
CLERK

6/7/2018 4:00 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

  Before the Court are two appeals filed by: (1) Harold Jones as Chapter 7 Trustee of the Belmonte Bankruptcy Estate (the "Trustee"); and (2) the Brand Law Firm. Each appeals from the judgment entered in favor of the Trustee (the "Order") by Bankruptcy Judge Alan Trust (the "Bankruptcy Court") after a bench trial before him. For the following reasons, the decisions of the Bankruptcy Court are affirmed.

1

## I.   BACKGROUND

**A.  Factual Background**

On October 5, 2012 (the "Petition Date"), an involuntary petition for bankruptcy was filed against Alice Belmonte ("Debtor").  (Appendix ("App.")[1] 35, § H, ¶ 1.)  Mr. Brand of the Brand Law Firm represented Debtor in the bankruptcy from October 5, 2012 to February 25, 2013.  (App. 35, § H, ¶ 6.)  On April 25, 2013, the Bankruptcy Court adjudicated Debtor bankrupt and on April 26, 2013, entered an order for relief against Debtor.  (App. 35, § H, ¶ 11.)   The Brand Law Firm received a total of $170,000 in legal fees for its representation of Debtor in the bankruptcy case.  (App. 551.)  However, despite an obligation to disclose receipt of these fees pursuant to 11 U.S.C. § 329, the Brand Law Firm failed to file the necessary disclosures with the Bankruptcy Court.  (App. 551-552.)

On October 17, 2013, Debtor was arrested pursuant to a 49-count indictment issued by the Supreme Court of the State of New York, which alleged various criminal offenses including fraud and grand larceny, committed by Debtor against certain creditors of her estate.  (App. 35, § H, ¶ 12.)  The Brand Law Firm, along with two other attorneys, Thomas Sadaka and Brian Waller, represented Debtor in her criminal case.  (App. 51, ¶ 33.)

From the Petition Date through April 21, 2016, Debtor and her then-husband, William Belmonte, owned a home and property located in Wading Riving, New York (the "Property") as tenants by the entirety.  (App. 35, § H, ¶ 13.)  The Property was subject to a first mortgage dated October 4, 2011 (the "First Mortgage").  (App. 35, § H, ¶ 15.)  As of May 2014, the principal due on the First Mortgage was $453,701.08.  (App. 35, § H, ¶ 18.)  Debtor and Mr. Belmonte divorced on or around April 21, 2016.  (App. 35, § H, ¶ 13.)

---

[1] All references to "App." are to the appendix submitted by the Brand Law Firm as an exhibit to its affirmation in support of its appeal.  See The Brand Law Firm, P.A. v. Jones, No. 17-CV-2503, ECF No. 9.

In early 2014, as part of an effort to fund Debtor's defense of her criminal case, Debtor and her husband entered into an agreement with their friend Patrick Thompson by which they executed a $250,000 promissory note in favor of Mr. Thompson in exchange for payment by Mr. Thompson to Debtor's criminal attorneys in the amount of $250,000. (App. 35, § H, ¶ 16.) The note had an effective date of January 2, 2014 and a five-year maturity at four percent simple interest per annum. (App. 87.) The note required that only a single balloon payment of the entire principal and accrued interest be made at maturity on January 2, 2019. (Id.) On July 17, 2014, Mr. Belmonte on his own behalf and on behalf of Debtor via power of attorney, executed, a second mortgage in favor of Mr. Thompson securing the $250,000 promissory note (the "Thompson Mortgage"). (App. 35, § H, ¶ 21.) Both the promissory note and the Thompson Mortgage were drawn up by the Brand Law Firm. (App. 86.)

On January 6, 2014, Mr. Thompson wired to the Brand Law Firm's trust account $110,000 of the $250,000 and on February 14, 2014, Mr. Thompson wired the remaining $140,000 to the same account. (App. 571.) Per an agreement between the three lawyers, $73,147 was transferred to Mr. Sadaka and $54,490 was transferred to Mr. Waller, as payment for their legal services in connection with Debtor's criminal case. (App. 395-396.)

**B. Procedural History**

On November 21, 2014, the Trustee filed an adversarial proceeding against Debtor, Mr. Belmonte, and Mr. Thompson seeking to avoid the Thompson Mortgage pursuant to 11 U.S.C. § 549 and to preserve the mortgage and the lien against the Property for the benefit of Debtor's estate (the "Estate") pursuant to 11 U.S.C. § 551. (App. 17-21.) The Trustee also sought to recover from Mr. Thompson the Thompson Mortgage or the equivalent of its value pursuant to 11 U.S.C. § 550,

as well as damages for a willful violation of the automatic stay in place pursuant to 11 U.S.C. § 362.  (Id.)

On March 24, 2015, the Bankruptcy Court entered an order approving a proposed settlement agreement between the Trustee and Mr. Thompson that: (1) avoided the Thompson Mortgage pursuant to 11 U.S.C. §§ 549 and 550; (2) preserved the lien created by the Thompson Mortgage for the benefit of the Debtor's Estate under 11 U.S.C. § 551; and (3) dismissed the adversarial case against Mr. Thompson.  (App. 161-164.)

On February 25, 2015, the Trustee filed a motion, requesting that the court order the Brand Law Firm and/or Mr. Brand to disgorge the full amount of the $170,000 paid to him by Debtor for legal services in connection with Debtor's bankruptcy.  (Trustee Appendix ("Trustee App.")[2] 97.)  The Trustee claimed that because such fees were excessive and because the Brand defendants initially failed to disclose them, the fees were subject to disgorgement pursuant to 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016 and 2017.  The Bankruptcy Court referred to this issue as the "Fee Dispute."  (Trustee App. 97-111.)

On April 22, 2015, the Trustee filed an adversarial proceeding against the Brand Law Firm and Mr. Brand personally, seeking to recover the full amount of the $250,000 as an unauthorized post-petition transfer pursuant to 11 U.S.C. § 549.  (Trustee App. 2.)  The Bankruptcy Court referred to this issue as the "§ 549 Dispute."

On June 7, 2016, the Bankruptcy Court consolidated both matters for discovery and trial, which was conducted on November 2 and 3, 2016.

---

[2] All references to "Trustee App." are to the appendix submitted by the Trustee as an exhibit to his affirmation in support of his appeal.  See Jones v. Brand, No. 17-2494, ECF No. 6.

4

## C. Bankruptcy Court's Findings

### i. The Fee Dispute

On March 16, 2017, the Bankruptcy Court issued an oral ruling on both issues. The Bankruptcy Court first conducted a reasonableness analysis of the $170,000 in legal fees paid to the Brand Law Firm for its work in connection with Debtor's bankruptcy. (App. 570-571.) The Bankruptcy Court took into account both Mr. Brand's experience and knowledge as well as the benefit his representation provided to Debtor. (App. 574-576.) He also considered the amount of fees paid to Debtor's other bankruptcy attorneys. (App. 571.) The Bankruptcy Court determined that, given Mr. Brand's lack of expertise in bankruptcy and the "high levels of disagreement and gamesmanship and tactics" engaged in by both Mr. Brand and counsel for the petitioning creditors, the amount paid to the Brand Law Firm was not reasonable. (App. 575.) The Bankruptcy Court determined that a reasonable fee for the services provided by the Brand Law Firm was $50,000 and, as a result ordered the Brand Law Firm to disgorge $120,000 of the $170,000 in fees received to the Debtor's estate. (App. 575.)

### ii. The § 549 Dispute

With respect to the § 549 Dispute, the Bankruptcy Court found that half of the $250,000 paid to the Brand Law Firm was recoverable by the Trustee on the basis that the transaction involved an unauthorized post-petition transfer of property belonging to Debtor's estate. (App. 576.) The Bankruptcy Court found that Debtor's interest in her home was property of the bankruptcy estate once the order of relief was entered and that the unauthorized transfer of the $250,000 occurred eight months after that time. (Id.) The Bankruptcy Court noted that while the funds were "nominally transferred to [the Brand Law Firm] by an entity allegedly owned or controlled by Patrick Thompson, the true transaction based upon the record was a loan being made

by Mr. Thompson or his entity to the Debtor and her non-filing spouse." (Id.) The Bankruptcy Court reasoned that because the loan was secured by a mortgage on the Property—in which Debtor's estate held a fifty percent interest—that half of the loan proceeds were also property of the estate pursuant to § 541(a)(6). (App. 576-577.)

Although the Bankruptcy Court found that $125,000 of the $250,000 was recoverable by the Trustee pursuant to § 550, it held that only $59,432 was recoverable from the Brand Law Firm. The Bankruptcy Court reached this conclusion after finding that the Brand Law Firm only retained $118,864 of the $250,000. The Bankruptcy Court found that "[i]n essence . . . [the Brand Law Firm] operated as an escrow agent or clearinghouse for the $250,000" and that it "did in fact pay out the majority of the funds, $73,147 to Mr. Sadaka and $54,490 to Mr. Waller for their work on the Debtor's criminal defense." (App. 578-579.)

Accordingly, the Bankruptcy Court concluded that "because the [Brand Law Firm] retained $118,864 and because that was procured by a transaction which involved one-half of the marital residence which belonged to the estate, [the Brand Law Firm] will be entitled to retain one-half of the amount [it] received but must surrender to the estate the other half, which is $59,432." (App. 579.)

The Bankruptcy Court noted that the Trustee had argued at trial that the $250,000 should also be analyzed under § 329 because the "payment of Mr. Brand's fees for the criminal matters were so closely intertwined with the bankruptcy case" that disgorgement was appropriate pursuant to § 329. (App 577.) The Bankruptcy Court explained in its Order that it had previously determined (and communicated to the parties) under which section of the Code each payment would be analyzed and that it was therefore unnecessary to reach the question of "whether or not a bankruptcy estate should be or could be depleted for the Debtor's criminal defense." (App. 578.)

6

With respect to both the Fee Dispute and the §549 Dispute, the Bankruptcy Court entered judgment solely against the Brand Law Firm because the record indicated that each of the payments were made to the Brand Law Firm and not to Mr. Brand individually.  (App. 581.)

**D. Issues on Appeal**

Both sides appealed from the Bankruptcy Court's Order.  The Brand Law Firm appeals on the basis that recovery of any portion of the $250,000 it received constitutes double-recovery because the Trustee already had the Thompson Mortgage avoided as part of its settlement with Mr. Thompson.  The Trustee appeals on the grounds that it should be able to recover the full amount of the $250,000 pursuant to § 550 on the basis that the entirety of the loan proceeds was property of the estate and pursuant to § 329 on the basis that the funds constituted excessive fees incurred "in connection with the Debtor's bankruptcy case."  (Memorandum of Law in Support of the Trustee's Appeal ("Trustee Mem.") 8.)  The Trustee argues that because the Brand Law Firm was the initial recipient of the $250,000, the Trustee should be able to recover the full amount from the Brand Law Firm, regardless of whether portions of those funds were later transferred to other persons or entities.  Lastly, the Trustee argues that it should be able to recover both the $120,000 and the $250,000 from Mr. Brand personally because Mr. Brand is a sole practitioner.

## II.  DISCUSSION

For the reasons that follow, the Bankruptcy Court's Order is affirmed in its entirety.

**A. Standard of Review**

The district court reviews the Bankruptcy Court's factual findings for clear error and its conclusions of law de novo.  See In re Charter Commc'ns, Inc., 691 F.3d 476, 483 (2d Cir. 2012); Fed. R. Bankr. P. 8013.  "While the trial court's findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden."  In re Miner, 229 B.R. 561, 565 (B.A.P.

2d Cir. 1999). The district court will only overturn the Bankruptcy Court's findings of fact if it "is left with the definite and firm conviction that a mistake has been committed." Campbell ex rel. Campbell v. Metropolitan Property and Cas. Ins. Co., 239 F.3d 179, 186 (2d Cir. 2001) (internal quotation marks and citations omitted).

Matters left to the Bankruptcy Court's discretion, such as an order to disgorge fees pursuant to § 329, are reviewed for abuse of discretion. See In re Am. Int'l Refinery, Inc., 676 F.3d 455, 461 (5th Cir. 2012) ("A bankruptcy court's decision to disgorge fees or impose a sanction is reviewed for abuse of discretion."); In re Gordon, 577 B.R. 38, 50 (S.D.N.Y. 2017) ("[A] bankruptcy court's award of sanctions will not be set aside by an appellate court in the absence of an abuse of discretion.").

**B. § 549 Dispute**

Section 549 of the Bankruptcy Code allows the Trustee to avoid a transfer of property of the estate that occurs after the commencement of the case and is not authorized by either the Bankruptcy Code or the court. 11 U.S.C. § 549(a). Section 550 allows the Trustee to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1).

As the Bankruptcy Court correctly observed, the § 549 Dispute in this case involves two distinct questions: (1) what portion of the $250,000 is recoverable by the Trustee and; (2) from whom is it recoverable? As to the first question, the Brand Law Firm argues that no portion of the $250,000 is recoverable, as none of it constitutes property of the estate, while the Trustee argues that the entire amount was property of the estate. Both are mistaken. I agree with the Bankruptcy's Court's analysis and conclusion that only half of the $250,000 constitutes property of the estate.

8

The Brand Law Firm makes two primary arguments in support of its assertion that the $250,000 was not part of Debtor's estate.  First, it appears to argue that the $250,000 represents the "value" of the Thompson Mortgage under § 550 and that because the Trustee successfully avoided the Thompson Mortgage and preserved the lien for the benefit of the estate, the Trustee could not recover both the mortgage and its "value" in violation of § 550's prescription that "[t]he trustee is entitled to only a single satisfaction under subsection (a) of this section."  11 U.S.C. § 550(d).  (Memorandum of Law in Support of the Brand Law Firm's Appeal ("Brand Mem.") 15-17.)  The Brand Law Firm, however, "conflates two separate, if factually-related transactions: (i) the transfer of a second mortgage to Patrick Thompson; and (ii) the transfer of $250,000 to [the Brand Law Firm]."  (Trustee's Opp. 14.)  The avoidance of the Thompson Mortgage simply allowed Debtor's estate to assume the lien rights to the Property that had been improperly transferred to Mr. Thompson.  That does not bar the Trustee from seeking to recover the loan proceeds received from Mr. Thompson and then transferred to the Brand Law Firm.

The Bankruptcy Court properly found that the $250,000 received by the Brand Law Firm was a loan from Mr. Thompson to Debtor and Mr. Belmonte in consideration for the promissory note they executed in Mr. Thompson's favor in February 2014.  Even the Brand Law Firm concedes, "Patrick Thompson funded the $250,000.00 proceeds of the loan to the Debtor and her husband who exercised dominion and control over the loan proceeds by directing Thompson to pay the loan proceeds for the defense of the Debtor's criminal charges."  (Brand Opp. 22.)  However, the Brand Law Firm also argues that because the loan proceeds were received several months after the Petition Date, they are property of Debtor, distinct from the property of the estate and therefore not subject to recovery under § 550.  Although the general rule is that after-acquired property of the Debtor is separate from property of the estate, see In re Bell, 225 F.3d 203, 215 (2d

9

Cir. 2000), the Brand Law Firm ignores another clearly established rule, set forth in the Bankruptcy Code, that "[p]roceeds, product, offspring, rents, or profits of or from property of the estate" are property of the estate, 11 U.S.C. § 541(a)(6); see also Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) ("[A]fter-acquired property will vest in the estate if it is derived from property that was part of the estate as of the commencement of the bankruptcy.") (internal quotation marks omitted); In re Bell, 225 F.3d at 215 (same). The Brand Law Firm blindly claims that "the $250,000 funded by Patrick Thompson did not originate from any part of the Debtor's estate," (Brand Mem. 17), but it provides no support—either factual or legal—to maintain that claim. In light of the record before the Bankruptcy Court, it is clear that the $250,000 loan proceeds were derived, at least in part, from property of the estate.

The Bankruptcy Court also properly determined that the Trustee was only entitled to recover half of the $250,000 as only half of the loan proceeds constituted property of the estate. At the time the loan proceeds were transferred, Debtor and Mr. Belmonte owned the Property as tenants by the entirety. Courts look to applicable state law to determine a debtor's interest in specific property and whether it becomes part of the estate. See Musso v. Ostashko, 468 F.3d 99, 105 (2d Cir. 2006); Butner v. United States, 440 U.S. 48, 55 (U.S. 1979). In New York, tenants by the entirety each possess an undivided one-half interest in the property. Reister v. Town Bd. of Town of Fleming, 18 N.Y.2d 92, 95 (1966); In re Persky, 893 F.2d 15, 19 (2d Cir. 1989) ("The interests of a tenant by the entirety are a right to the use of an undivided half of the property during the joint lives of a husband and wife and a survivorship right to the entire fee."). "As tenants by the entirety, both spouses enjoy an equal right to possession of and profits yielded by the property." Goldman v. Goldman, 95 N.Y.2d 120, 122 (2000). Thus, Debtor possessed a fifty-percent interest

in the total amount of the loan proceeds, meaning that half of the $250,000 was property of Debtor's estate.

However, the inquiry does not end there, as the Bankruptcy Court next had to determine what portion of the $250,000 was recoverable from either the Brand Law Firm or Mr. Brand personally. The Bankruptcy Court found that because the Brand Law Firm "did in fact pay out the majority of [the funds received], $73,147 to Mr. Sadaka and $54,490 to Mr. Waller for their work on the Debtor's criminal defense," the Brand Law Firm "[i]n essence . . . operated as an escrow agent or clearinghouse for the $250,000," and that the Trustee could only recover half of the amount of loan proceeds retained by the Brand Law Firm, which was $59,432. (App. 578-579.)

The Trustee argues that the Bankruptcy Court erred in its conclusion and that the Brand Law Firm should instead be liable for the entire amount of funds received, including any amounts subsequently transferred to the other criminal attorneys, because the Brand Law Firm "was the sole party with control over disbursement of the funds." (Trustee Mem. 9.) In support of this argument, the Trustee cites to testimony that Mr. Thompson, when making the loan, was unaware of the precise allocation of funds between the three criminal attorneys and to the Bankruptcy Court's finding that "Mr. Brand structured the transaction by which the $250,000 would be receipted and disbursed, including payment mechanics, and used his law firm trust account [as] the original repository for these funds." (App. 579.) Although it is clear from the record that the Brand Law Firm was tasked with the literal mechanics of transferring to Mr. Sadaka and Mr. Waller their respective portion of the funds, the Trustee ignores that the Brand Law Firm was under a legal obligation to disburse those funds pursuant to an agreement between Debtor, Mr. Thompson and her criminal attorneys. Even the testimony of Mr. Waller cited by the Trustee demonstrates that Mr. Waller billed the Brand Law Firm for legal services his firm provided to

11

Debtor in her criminal case, (App. 122), and that his firm received $54,490 from the Brand Law Firm as "payment in full for the fees and costs relating to [his] firm's representation of [Debtor]." (App. 509.)  Indeed, Mr. Sadaka testified that prior to the loan disbursement, he met with Mr. Thompson and Mr. Brand to discuss Debtor's criminal legal fees and that the $250,000 was a quote provided by the attorneys for an initial trial fee. (App. 419-420.)  Mr. Sadaka also testified that the $73,147 he received from the Brand Law Firm was payment for his firm's legal representation of Debtor in her criminal case. (App. 427-428.)

Thus, the Brand Law Firm was under a legal obligation to transfer Mr. Sadaka's and Mr. Waller's respective portion of the funds to each of them as payment for their legal services and could not spend the funds in whatever way it desired, as the Trustee argues.  Furthermore, the funds were received into the Brand Law Firm's trust account, which also created certain legal (and ethical) obligations to the principals for which the funds were held in trust, and prevented the Brand Law Firm from utilizing the funds for any purposes other than those agreed upon. See Matter of Coutee, 984 F.2d 138, 141 (5th Cir. 1993) (holding that funds received into a lawyer's trust account were "held merely in a fiduciary capacity for the [debtors]"); In re Moon, 385 B.R. 541, 553 (Bankr. S.D.N.Y. 2008) ("At no point was Mr. Paul legally permitted to use the portion of the Settlement Proceeds in his trust account to which he had to account to his client.  He would have been subject to contractual liability and serious ethical consequences if he had attempted to purchase 'lottery tickets or uranium stock' with moneys held in his attorney's trust account.").

It makes no difference that Mr. Thompson did not know or care what the specific allocation of the $250,000 would be amongst the three criminal attorneys.  The record makes clear—and the Trustee concedes (see Trustee Mem. 20-21)—that the $250,000 was transferred to the Brand Law Firm for the purpose of paying *all* of Debtor's criminal legal bills up until that point.  In light of

these facts, the Bankruptcy Court's ruling that the Brand Law Firm must return to the estate $59,432, which represents one-half of the amount the firm retained, is affirmed.

### C.  § 329 Disgorgement

The Trustee also argues that he should be able to recover the full amount of the $250,000 pursuant to § 329 of the Bankruptcy Code, which allows the Bankruptcy Court to order an attorney to disgorge any portion of fees received for work in connection with a debtor's bankruptcy case to the extent that the fees paid were excessive.  11 U.S.C. § 329(b).  The Trustee contends that the $250,000 represents legal fees paid to the Brand Law Firm for its services "in connection with" Debtor's bankruptcy case because the criminal case and the bankruptcy case were so closely-related and that such fees "were inherently excessive, and provided no benefit whatsoever to the Debtor's estate."  (Trustee Mem. 14.)  In its ruling, the Bankruptcy Court did not conduct a § 329 reasonableness analysis of the $250,000 as it analyzed those funds under §§ 549 and 550.  (App. 578.)  The Trustee claims that in failing to conduct an analysis of the $250,000 pursuant to § 329, the Bankruptcy Court committed reversible error.  I disagree.

The Trustee's argument is flawed in that he seeks to recover the same funds under § 329 that the Bankruptcy Court already ordered must be returned pursuant to § 550.  Under § 329, the Bankruptcy Court can only order the return of property paid to the attorney that "would have been property of the estate."  11 U.S.C. § 329(b)(1)(A).  As discussed above, while the Brand Law Firm initially received the $250,000 into its trust account, only $118,864 was paid to the Brand Law Firm and only half that amount was property of the estate.  The Bankruptcy Court's Order already obligates the Brand Law Firm  to return that amount to the estate pursuant to §§ 549 and 550.  Accordingly, there are no remaining funds for the Brand Law Firm to disgorge pursuant to § 329.

13

**D. Individual Liability**

Finally, the Trustee argues that because Mr. Brand is the sole employee of the Brand Law Firm, the Bankruptcy Court erred in denying the Trustee's request for judgment against Mr. Brand personally. As stated earlier, a Bankruptcy Court's decision regarding disgorgement or sanctions is reviewed for abuse of discretion. Here, the Bankruptcy Court found that each of the payments at issue was made to the Brand Law Firm and not to Mr. Brand personally, and therefore reasoned that judgment should be entered only against the Brand Law Firm. (App. 581.) The Bankruptcy Court's conclusion is supported by the record and was not an abuse of discretion. Moreover, the Trustee fails to provide any factual or legal support requiring reversal. The Bankruptcy Court's decision to enter judgment against only the Brand Law Firm is affirmed.

### III.   CONCLUSION

For the reasons set forth above, the Bankruptcy Court's Order dated March 16, 2017 is AFFIRMED. The Clerk of Court is directed to close these cases.

**SO ORDERED.**

Dated: June 7, 2018
      Central Islip, New York

                                                    /s/  (JMA)
                                            JOAN M. AZRACK
                                            UNITED STATES DISTRICT JUDGE